UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA HAWKINS,<br>　　　Plaintiff<br>　　v.<br>NANCY A. BERRYHILL[1], Acting Commissioner of Social Security,<br>　　　Defendant. | Case No. 2:16-cv-02012-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Pamela Hawkins ("Plaintiff") filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 28 ("Pltf.'s Br.") and Dkt. 30 ("Def.'s Br.").] The Court has taken the parties' briefing under submission without oral argument. For the reasons set forth below, the Court affirms the decision of the

---

[1] The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this action.

ALJ and orders judgment entered accordingly.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On September 19, 2012, Plaintiff filed an application for Supplemental Social Security Income ("SSI"). [Dkt. 15, Administrative Record ("AR") 132-140.] The Commissioner denied her initial claim for benefits on March 5, 2013. [AR 58-67.] On March 13, 2014, a hearing was held before Administrative Law Judge ("ALJ") Robert Evans. [AR 40-57.] On April 10, 2014, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 26-39.] Plaintiff requested review from the Appeals Council, which denied review on June 20, 2016. [AR 1-4.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since September 19, 2012. [AR 31.] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension, low back pain, right shoulder arthritis and carpal tunnel syndrome. [*Id.* (citing 20 C.F.R. § 416.920(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).]

The ALJ found that Plaintiff had the following residual functional capacity (RFC):
> [L]ight work as defined in 20 CFR 416.967(b) further restricted by the following limitations: to lift and carry 10 pounds frequently and 20 pounds occasionally; stand and walk for 6 hours in an 8-hour workday with normal breaks; sit for 6 hours in an 8-hour workday; and occasionally kneel, crouch, stoop, perform gross or fine manipulations with either hand.

[AR 31-34.] Applying this RFC, the ALJ found that Plaintiff had no past relevant work, but determined that based on her age (52 years old), high school education,

2

and ability to communicate in English, she could perform representative occupations such as flagger (Dictionary of Occupational Titles ("DOT") 372.667-022), usher (DOT 344.677-14), and surveillance system monitor (DOT 379.367-010) and, thus, is not disabled. [AR 35-36.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

Plaintiff contends that the ALJ: (1) erred in his step five determination; and (2) erred in evaluating Plaintiff's subjective complaints. [Pltf.'s Br. at 2-3.] The Court will address each contention in turn.

**A. The ALJ's Step Five Determination Was Proper.**

At step five, Ruth Arnush, the vocational expert, identified three positions that a person with Plaintiff's RFC could perform and provided national and regional position availability as follows: (1) surveillance system monitor, DOT position 379.367-010,with 1,400 positions locally and 54,000 positions nationally; (2) flagger, DOT 372.667-022, with 1,900 positions regionally and 150,000 nationally; and (3) usher, DOT 344.677-014, with 1,700 positions locally and 32,000 nationally. [*Id.*] The ALJ adopted the vocational expert's conclusions in his opinion. [AR 35.]

Plaintiff attacks the VE's identification of all three positions. First, she argues that the VE's identification of the first two was error because the jobs

requirements are inconsistent with her RFC. Second, she contends the third position does not exist in significant numbers in the economy.

### 1. Surveillance System Monitor And Flagger

Plaintiff first contends the ALJ erred at step five of the sequential evaluation because her RFC limitation to performing *occasional* gross and fine manipulations precludes her from performing the two of the three jobs identified by the vocational expert ("VE"), including working as a flagger and surveillance systems monitor. [Pltf.'s Br. at 5.] Plaintiff asserts that the descriptions for these jobs in the Dictionary of Occupational Titles ("DOT") require her to perform *frequent* gross handling and fine fingering, which is more than is permitted by her RFC. [*Id.*]

However, the DOT description for the surveillance system monitor indicates that reaching, handling, and fingering are "not present." *See* DOT § 379.367-010, 1991 WL 673244. Thus, Plaintiff is incorrect that her limitations are inconsistent with the systems surveillance position. Plaintiff appears to rely on the incorrect DOT number in her analysis of the systems surveillance position—citing DOT § 379.36**2**-010 instead of DOT § 379.36**7**-010. The DOT number Plaintiff references is for the radio dispatcher position (not the system surveillance position). Accordingly, it appears that Plaintiff is simply mistaken in her belief that the systems surveillance position conflicts with her RFC.[2]

The DOT description for the flagger job requires *frequent* reaching and handling, however it requires only *occasional* fingering. *See* DOT § 372.667-022, 1991 WL 673097. Nonetheless, as the Commissioner concedes, Plaintiff's RFC

---

[2] The Court notes that in the hearing transcript, the VE testifies that Plaintiff could work as a "surveillance system monitor" but cites the same incorrect DOT number (DOT § 379.36**2**-010 instead of DOT § 379.36**7**-010). Plaintiff may have inadvertently copied the transcript without double-checking that the DOT numbers listed were correct. It is unclear if the VE misspoke or if this is a transcriber error, but it is undisputed that the job the VE was referring to was the surveillance system monitor position (not the radio dispatcher position). Thus, while this may be a transcription error, it is not an ALJ error.

4

appears to conflict with the reaching and handling requirements for the flagger position. [Def.'s Br. at 3.] However, by properly identifying the position of "surveillance system monitor," the ALJ has met his burden to demonstrate that Plaintiff could perform some work that exists in "significant numbers" in the national or regional economy, taking into account Plaintiff's RFC, age, education, and work experience. *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966(a); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014); *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). As such, any identification of additional jobs that Plaintiff could perform, even if erroneous, is harmless error. *See Mitchell v. Colvin*, 584 Fed. App'x 309, 312 (9th Cir. 2014) (finding that erroneous identification of job constituted harmless error where ALJ identified another that existed in significant numbers); *Yelovich v. Colvin*, 532 Fed. App'x 700, 702 (9th Cir. 2013) (same). Accordingly, Plaintiff is not entitled to reversal or remand on this issue.

**2. Usher**

Plaintiff next argues that the numbers the VE should not have relied upon for the usher job because the U.S. Department of Labor's O*NET site suggests that most usher jobs are performed on a part-time basis. [Pltf.'s Br. at 7-9.] The Commissioner responds that Plaintiff "waived" this argument by failing to raise it in the hearing before the ALJ or during Plaintiff's request for review from the Appeals Council. [Def.'s Br. at 4.] For the reasons discussed below, the Court finds that Plaintiff, who was represented by counsel in the administrative proceedings, waived this issue by failing to raise it the administrative process.

Defendant relies on *Meanel v. Apfel,* 172 F.3d 1111 (9th Cir. 1999) (as amended June 22, 1999) to support its position that Plaintiff waived any challenge to the numerosity determination. [Def.'s Br. at 4.] In *Meanel*, the Ninth Circuit held that when a claimant who is represented by counsel has failed to raise an issue at the hearing before the ALJ, and failed to present such an issue to the Appeals Council,

and only presented the issue for the first time to a reviewing district court, the issue is waived. *Meanel,* 172 F.3d at 111 (internal citations omitted). The Ninth Circuit noted that "[w]e will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice." *Id.* at 1115.

In a more recent case, *Shaibi v. Berryhill*, No. 15-16849, ––– F.3d –––, 2017 WL 3598085 (9th Cir. Aug. 22, 2017), the Ninth Circuit found that a plaintiff had waived a challenge to the factual basis for a VE's estimate of the number of available jobs in the regional and national economies because he did not raise this challenge before either the ALJ or the Appeals Council before arguing to the federal district court that the VE's job estimates "deviated from listed sources of administrative notice." *Id.* at *5. The Ninth Circuit acknowledged that the reliability of, or evidentiary basis for, a VE's job numbers is a recurring issue in the federal courts and noted the following:

> [W]e have issued no precedential opinion concerning when a Social Security claimant must, absent a showing of good cause, challenge the evidentiary basis of a vocational expert's job numbers to preserve the issue for litigation in the district court. We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant waives such a challenge on appeal, at least when that claimant is represented by counsel.

*Id.* at *6. The Ninth Circuit reasoned that this conclusion was compelled by previous decisions, particularly *Meanel,* where the circuit court emphasized that the agency—either the ALJ or the Appeals Council—as opposed to the federal court "was in the optimal position to resolve the conflict between [the claimant's] new evidence and the statistical evidence provided by the VE." *Id.* (citing *Meanel*, 172 F.3d at 1115).

*Shaibi* and *Meanel* are dispositive here. Plaintiff was represented by counsel at both ALJ hearings. [*See* AR 40 (identifying Burton Anwar as claimant attorney); 20 (Steven Rosales, claimant's attorney for administrative appeal).] At the hearing,

6

Plaintiff's attorney cross-examined the VE briefly, but he did not suggest that the VE's job estimates were inaccurate, nor did he inquire as to how many ushers worked full time schedules. Plaintiff also did not raise new evidence casting doubt on the VE's jobs estimate before the Appeals Council, even though the information appears to have been readily accessible through internet searches of the relevant agency websites.

Plaintiff makes no showing or argument demonstrating good cause for her failure to present this issue during the administrative proceedings nor does she establish that a "manifest injustice" would ensue from a finding of waiver. *See Meanel*, 172 F.3d at 1115. Indeed, Plaintiff offers no explanation for her failure to present the ALJ or Appeals Council with the publicly available information now at issue. Accordingly, consistent with *Shaibi* and *Meanel,* this Court finds that Plaintiff waived the issue presented here by failing to challenge to the validity of the VE's opinions about the availability of the usher job in the administrative appeal process.

The Court notes that even if Plaintiff had not waived this issue, remand would not be warranted on this basis because the ALJ properly identified the position of "surveillance system monitor," as stated *supra*, and therefore met his burden to demonstrate that Plaintiff could perform some work that exists in "significant numbers" in the national or regional economy, taking into account Plaintiff's RFC, age, education, and work experience. Accordingly, identification of additional jobs that Plaintiff could perform, such as "usher," even if erroneous, is harmless error. *See Mitchell v. Colvin*, 584 Fed. App'x 309, 312 (9th Cir. 2014) (finding that erroneous identification of job constituted harmless error where ALJ identified another that existed in significant numbers).

///

///

**B. The ALJ's Decision Sets Forth Specific Reasons for Finding Plaintiff Not to Be Credible.**

Plaintiff's also challenges whether the ALJ provided specific reasons for rejecting Plaintiff's testimony about her symptoms. "[T]o ensure our appellate review is meaningful,…we require the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and…explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal quotation omitted). Accordingly, "[g]eneral findings are insufficient." *Id.* (internal quotation omitted). And as the Ninth Circuit held in *Treichler*, "boilerplate statement[s]" and "introductory remark[s]," *without more*, "fall[] short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' [her] adverse determination is based." *Id.* at 1103.[3]

Here, Plaintiff claims that the ALJ violated his duty to provide specific reasons because the ALJ, according to Plaintiff, gave only the following boilerplate:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[Pltf.'s. Br. at 12 (quoting AR 32).] And this Court would agree, if that were the only thing the ALJ said about Plaintiff's credibility. But the ALJ said far more.[4]

---

[3] Relevant here, the Ninth Circuit explained in *Treichler* that "after making [a certain] boilerplate statement, the ALJs typically identify what parts of the claimant's testimony were not credible and why." *Treichler*, 775 F.3d at 1103. Thus, it is fair to say that there is no black letter rule against using boilerplate introductory statements.

[4] Whether the ALJ stated his bases for her credibility determination is a question different from whether the ALJ's reliance on those bases was appropriate. The latter is addressed *infra* at Part IV.C.

8

First, the ALJ explained, "the medical evidence in the record does not substantiate Plaintiff's allegations of disabling pain." [AR 32.] Second, the ALJ explained, that although Plaintiff testified that she could not walk more than five yards, the ALJ observed that Plaintiff walked into the hearing room from the lobby. [AR 33.] Third, the ALJ contrasted Plaintiff's description of her disabling pain with her conservative treatment. [*Id.*] Fourth, the ALJ reported that Plaintiff's "verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations." [AR 34.]

Plaintiff's own brief further undercuts her position. After claiming that the ALJ's decision does not present specific reasons for discounting her testimony, Plaintiff attacks the ALJ's reasons for finding her not to be credible. [*See, e.g.*, Pltf.'s. Br. at 8 ("It appears that the ALJ simply rejects Ms. Hawkin's testimony based on a belief that the testimony is not credible because it lacks support in the objective medical evidence."); *id.* at 15 ("The ALJ's other observation regarding Ms. Hawkin's appearance at the hearing is also not a legally sufficient rationale."); *id.* at 16 ("Even the fact that Ms. Hawkins has some ability some of the time to perform something is not reason enough to find [her] not credible."); *id.* at 17 ("Turning to the ALJ's last assertion (AR 32) that 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment' court have recognized that this rational [sic] appears to turn the credibility analysis on its head.").] Accordingly, the ALJ provided specific reasons for the credibility determination.

### C. The ALJ's Opinion Provides At Least One Clear and Convincing Reason for the Credibility Determination.

Plaintiff next asserts that the ALJ failed to state sufficient reasons for discounting her credibility. [Pltf.'s Br. at 13-19.] Because there is no allegation of malingering and the ALJ found that "claimant's medically determinable

9

impairments could reasonably be expected to cause the alleged symptoms" [AR 32], the ALJ's reasons must be clear and convincing. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted).

Here, the ALJ gave four reasons to reject Plaintiff's credibility: (1) Plaintiff's conservative treatment; (2) inconsistencies between Plaintiff's testimony and her actions at the hearing; (3) Plaintiff's demeanor at the hearing; and (4) inconsistencies between the objective medical evidence and Plaintiff's allegations of disabling limitations. The Court takes each in turn.

**1. Plaintiff's Conservative Treatment**

The ALJ's reliance on Plaintiff's treatment history was a clear and convincing reason for finding her less than fully credible. It is settled law that an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to bear on a claimant's credibility. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

Plaintiff testified at the hearing that her back and hands prevent her from working and stated that her pain was at level ten on a scale from one to ten. [AR 46.] Plaintiff also noted problems with her shoulder and knees. [AR 47-52.] However, the ALJ found, and Plaintiff does not challenge, that "she underwent bilateral [carpal tunnel syndrome] approximately ten to fifteen years prior to the hearing and ha[s] not [been] treated [for this condition] since." [AR 33.] The ALJ also found that "[t]he records reveal that claimant sought *intermittent* treatment

10

primarily for high blood pressure, right shoulder pain, and low back pain." [*Id.* (emphasis added).] In addition, many of Plaintiff's treatment records for these physical limitations date back to the early 2000s. [*See, e.g.,* 250, 285-286, 287, 291, 350-351, 355.] This alone constitutes a clear and convincing reason for finding Plaintiff's testimony that she is unable to lift more than a cup, grip anything, sit for more than two hours, walk up and down stairs, button shirts, and walk more than five yards to be exaggerated. [*See* AR 47-52.] Plaintiff does not address this finding, let alone argue it is unsupported by substantial evidence. Thus, the ALJ properly determined that Plaintiff's limitations were not as severe as alleged based on the gaps in her medical treatment, especially around Plaintiff's alleged onset date of September 19, 2012. The Court's analysis could end here.

## 2. Inconsistencies Between Plaintiff's Testimony And The ALJ's Own Observations

The ALJ also discounted Plaintiff's statements to the extent they were inconsistent with his own observations. [AR 33.] The ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness. *Fair v. Bowen,* 885 F.2d 597, 604 n. 5 (9th Cir. 1989). Accordingly, the ALJ may rely on what he observes at a hearing that undermines a Plaintiff's alleged symptoms. *Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999); *O'Bosky v. Astrue,* 651 F.Supp.2d 1147, 1163 (E.D. Cal. 2009) ("The ALJ may also rely, in part, on his own observations."). Plaintiff testified at the administrative hearing that she could not work because she could only walk about five yards. [AR 47.] However, the ALJ observed that Plaintiff walked to the hearing room from downstairs (which is more than five yards). [AR 47-48.] Plaintiff attempted to reconcile this inconsistency by stating that she "still hurts." Nonetheless, based on the testimony and his observations at the hearing, the ALJ properly considered Plaintiff's inconsistent statements regarding her walking limitation.

11

### 3. Plaintiff's Demeanor

It is well established that an ALJ may not rely solely on his personal observations of a claimant's behavior to determine a claimant's testimony is not credible. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). The underlying rationale is that a claimant's "demeanor at the hearing provides little, if any, support for the ALJ's decision to discredit the testimony." "Although an ALJ's personal observations, standing alone, cannot support a determination that a claimant is not credible, they may form part of that determination." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (citing *Fair*, 885 F.2d at 602 ("That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain.").

The ALJ's finding that "after carefully observing the claimant at the hearing, the undersigned further notes that her verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations," is not itself a convincing reason to find Plaintiff not to be credible. The ALJ provides no concrete observations to distinguish his analysis from the prohibited "sit-and-squirm" credibility determination and provides no foundation to test the veracity of any alleged observations. Accordingly, Plaintiff's demeanor at the hearing does not itself present a clear and convincing reason for rejecting her credibility.

### 4. The Objective Medical Evidence

Plaintiff also asserts that the ALJ improperly relied on a lack of objective evidence in rejecting her subjective symptom testimony. [Pltf.'s Br. at 13-14.] However, because the Court has already determined that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints, it need not determine whether the ALJ erred in considering this other reason for discrediting Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1162-63 (finding an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if the ALJ's "remaining reasoning and ultimate credibility

12

determination were adequately supported by substantial evidence in the record"). Accordingly, the Court concludes that reversal is not warranted based on the ALJ's alleged failure to properly consider Plaintiff's credibility.

### V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: September 15, 2017

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE